UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| EMMANUEL OLIVER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 2:14-cv-00366-WTL-MPB |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**Entry Granting Motion for Summary Judgment**

Plaintiff Emmanuel Oliver, a former inmate of the Federal Correctional Institution in Terre Haute, Indiana ("FCI Terre Haute") brought this action alleging that he received inadequate medical care while confined at that facility. Specifically, Oliver asserts that he should have been, but was not, provided with continuous oxygen therapy because of his lung disease. He also asserts that he was not properly treated for sleep apnea. In his Amended Complaint, filed on April 14, 2015, Oliver asserts claims under the Federal Tort Claims Act ("FTCA") and the Eighth Amendment to the United States Constitution pursuant to the theory recognized in *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971). The defendants move for summary judgment on Oliver's claims and Oliver has responded.[1] For the reasons that follow, the motion for summary judgment, [dkt. 64] is **granted**.

---

[1] The Court notes that Oliver requested the Court assist him with recruiting counsel to represent him and the Court was able to, and did, recruit counsel to represent him for purposes of participating in discovery. Dkt 71. The Court *sua sponte* extended the discovery deadline and Oliver's deadline to respond to the motion for summary judgment. Dkt. 72. Once counsel's limited representation was complete, counsel was allowed to withdraw and Oliver did not seek further assistance in recruiting counsel to represent him. *See* Dkt. 75. Oliver's passing request for "more time to provide more facts and also a lawyer" in his memorandum in response to the motion for summary judgment (dkt 78-1) is **denied**. Litigants requesting that counsel be

**Statement of Facts**

Oliver was diagnosed December 2007 with Sarcoid.[2] Oliver was transferred from Wishard Hospital to the FCI Terre Haute on August 13, 2008. During his stay at FCI Terre Haute, between 2008 and 2012, Oliver was seen by Bureau of Prison ("BOP") physicans on a number of occasions each year. He was also treated at the infirmary on a number of occasions and required hospitalization a number of times each year from 2008 through 2012. BOP physicians requested that Oliver be seen by specialists, primarily pulmonary specialists, although he was also seen by Cardiology, Internal Medicine, and Ophthalmology specialists during the time frame of 2008 through 2012. His care was overseen by pulmonary specialists each time he was hospitalized, which occurred a number of times each year between 2008 and 2012. Oliver states that during this time frame he needed continuous oxygen therapy and this was not supplied to him.

The defendants have submitted an expert opinion from Dr. Mitchell Pfeiffer, a board certified pulmonary specialist. Dr. Pfeiffer reviewed Oliver's medical records and concluded that he did not require continuous oxygen therapy. Dr. Pfeiffer explains:

---

recruited must show as a threshold matter that they made a reasonable attempt to secure private counsel. *Gil v. Reed,* 381 F.3d 649, 656 (7th Cir. 2004); *Zarnes v. Rhodes,* 64 F.3d 285, 288 (7th Cir. 1995). The court must deny "out of hand" a request for counsel made without a showing of such effort. *Farmer v. Haas,* 990 F.2d 319, 321 (7th Cir. 1993). Oliver does not indicate whether, before renewing his request for counsel, he has made a reasonable attempt to recruit counsel on his own, nor has he elaborated on why he was unable to respond to the motion for summary judgment on his own having had the assistance of counsel with discovery. *See Pruitt v. Mote*, 503 F.3d 647, 654-655 (7th Cir. 2007) (court must ask whether the plaintiff is competent to litigate the case himself).

[2] The parties do not define this condition, but the Mayo Clinic defines Sarcoidosis as: "the growth of tiny collections of inflammatory cells (granulomas) in different parts of your body — most commonly the lungs, lymph nodes, eyes and skin." *Sarcoidosis*, http://www.mayoclinic.org/diseases-conditions/sarcoidosis/home/ovc-20177969 (visited Feb. 23, 2017). Oliver's claims are based on this condition as it affects his lungs.

> The standard level of care for continuous oxygen therapy is specific in terms of looking at oxygen saturation below certain parameters. One of the hallmarks to the criteria is that when a patient is sick or ill or going into the hospital, is that in order to look at the need for home oxygen therapy, whether it is intermittent or continuous, is based on what his oxygen saturations were like at the recovery phase after treatment has been initiated for whatever the underlying problem or process was. . . . [C]ontinuous oxygen therapy is not something that is "suggested," there are strict criteria for it and you either meet the criteria or you do not. Each time Oliver had difficulty with breathing, and there were certainly a number of them, his oxygen saturation would be low, but at the conclusion of therapy or at the conclusion of hospitalization, Oliver would no longer meet the criteria for oxygen therapy and therefore, did not require it.

For example, on September 5, 2012, during an office visit for oxygen qualification testing, a note written by Dr. Lawrence Dultz at UAP Clinic Pulmonology, states the following:

> Patient in office today for pulmonary function testing and re-evaluation of sarcoid. Patient O2 saturation to room air 84% at rest. Patient ambulated on room air Saturations of 79%. O2 applied at 2L, saturation remained 79%. O2 increased to #L, ambulated, saturation 81%. O2 increased to 4L, ambulated, saturation 84%. O2 increased to 5L, ambulated, saturation 87%. O2 increased to 6L, ambulated, saturation 94%. Patient sat down. O2 was removed, saturations 95%. Patient ambulated on room air, saturation from 91% to 98%. Nurse Practitioner notified of saturation levels. Patient currently at Federal Prison, does not allow for oxygen therapy on a routine basis. Will forward to Dr. Dultz for his review.

At the conclusion of the note, it says "It looks like all he had to do to stay on the 90s without O2 was to move around a bit and 'pop' open areas of atelectasis. The treatment is for him to be active, lose weight, and maybe use an incentive spirometer 4 times a day or so. I don't think he should be on continuous O2 or even O2 with exertion," and, at the final conclusions of the note, Dr. Dultz's opinion is that Oliver does not need continuous O2. Dr. Pfeiffer explains that this was the situation on virtually every occasion, or exacerbation, but after treatment and at the conclusion of the treatment or after hospitalization and at the very end of hospitalization, Oliver's situation had improved, his oxygen level had normalized, and he did not qualify for

3

continuous oxygen therapy nor intermittent oxygen therapy. Dr. Pfeiffer concludes that BOP physicians met the standard of care for Oliver's conditions.

Dr. Pfeiffer also explains that if Oliver had been denied needed oxygen therapy he would have developed pulmonary hypertension, right-side heart failure, and signs of cor pulmonale. However, in testing throughout the years from 2008 to 2012, and even into early 2013, Oliver has had several cardiac echocardiograms, cardiac MRIs, including cardiac catheterization, none of which show any sign of left nor right-sided heart failure or dysfunction in any way. According to Dr. Pfeiffer, there was no sign of elevated pulmonary artery pressures, no sign of secondary pulmonary hypertension, nor cor pulmonale. Dr. Pfeiffer concludes that Oliver has not suffered permanent harm from the treatment; the fact that each time he was started on appropriate therapy his level of pulmonary function would improve, indicates that it was still an inflammatory process able to respond to treatment and reversible.

With regard to Oliver's complaint about sleep apnea, Dr. Pfeiffer states: Oliver did have access to his CPAP unit and wore his CPAP unit while he was at FCI Terre Haute. At each hospitalization, Oliver was seen by a pulmonary specialist, who, at any point in time without needing to do a sleep study, the specialist could have increased the pressure in Oliver's CPAP machine or requested that this be done. Dr. Pfeiffer concludes: "I do not see anywhere in Mr. Oliver's complaint nor in his notes that any of these pulmonary specialists asked for the pressures in the CPAP unit to be increased."

According to Dr. Pfeiffer, the BOP physicians provided care appropriate to their level of their training and expertise. In doing so, the Bureau of Prison physicians met the appropriate

standard of care. Oliver suffered no harm from not wearing oxygen and his Sarcoid should improve with appropriate therapy.

## Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001).

## Discussion

The defendants move for summary judgment arguing that Oliver cannot meet his burden of proof to show that that he received negligent medical care and that if he loses on his FTCA claim, he is barred from recovery on his *Bivens* claim.

A. *FTCA*

First, the United States argues that it is entitled to judgment on Oliver's FTCA claim. The FTCA is a limited waiver of sovereign immunity that subjects the federal government to liability for certain torts committed by federal employees acting within the scope of their employment. 28 U.S.C. §§ 2671-2680; *United States v. Orleans*, 425 U.S. 807 (1976). Specifically, the FTCA covers injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act of omission occurred." 28 U.S.C. § 1346(b). Thus, Oliver's FTCA claim based on allegedly negligent medical care is governed by Indiana medical malpractice law. The elements of a medical malpractice case in Indiana are: "(1) that the physician owed a duty to the plaintiff; (2) that the physician breached that duty; and (3) that the breach proximately caused the plaintiff's injuries." *Mayhue v. Sparkman*, 653 N.E.2d 1384, 1386 (Ind. 1995).

The United States argues that it is entitled to summary judgment because Oliver has failed to meet the second two elements of a medical malpractice claim. Stated another way, the United States argues that Oliver has no evidence to show that the treatment he received fell below the standard of care or that any deficiency in his care was the proximate cause of any injury. The United States points out that Oliver is not a medical expert and therefore his own interpretation of his medical records and medical treatment is insufficient to show that the care was negligent. *Syfu v. Quinn,* 826 N.E.2d 699, 703 (Ind. Ct. App. 2005) ("To establish the applicable standard of care and to show a breach of that standard, a plaintiff must generally

present expert testimony."). Further, the United States has presented Dr. Pfeiffer's expert testimony. Dr. Pfeiffer reviewed Oliver's medical records and has opined that the care Oliver received was appropriate. Specifically, Dr. Pfeiffer asserts that Oliver did not require continuous oxygen therapy because he was able to recover from his episodes of shortness of breath after intermittent oxygen treatment. Dr. Pfeiffer also states that BOP doctors appropriately followed the advice of outside specialists and that the medical testing Oliver received during the times relevant to his complaint do not show any harm to him by the failure to provide continuous oxygen therapy. Oliver responds arguing that one of his providers, Dr. Bittar, noted that he might benefit from continuous oxygen. Oliver is apparently referring to a note made in November 2008 that "[t]he patient might also benefit from oxygen supplement." Dkt. 1-2 pg 8. But this note is not conclusive and cannot rebut Dr. Pfeiffer's expert testimony that he did not need continuous oxygen. Oliver also argues that the specialists made note of the fact that Terre Haute would not supply continuous oxygen and the specialists were therefore left to lay out a plan that was secondary to what they would have done had FCI supplied continuous oxygen, but the same note to which Oliver seems to refer, made on September 10, 2012, concludes "I don't think he should be on continuous O2." Dkt. 1-2 pg 16. Again, this is not enough to call into question the evidence provided by the United States. Finally, Oliver refers to a medical record from February of 2013 from FCI Ashland stating "Patient requires intermittent oxygen therapy; worsening of symptoms suggests the possibility of continuous oxygen therapy in the near future. Clinical picture suggest pulmonary hypertension or cor pulmonale with increased risk of respiratory and congestive heart failure." Dkt. 78-1, pg 12-13. Oliver concludes that this statement directly contradicts Dr. Pfeiffer's conclusion that Oliver did not suffer any injury as a result of not being

provided continuous oxygen between 2008 and 2012. But, again, Oliver is not an expert able to provide an opinion regarding his medical records or treatment. Further, this note itself does not conclude that Oliver immediately needed continuous oxygen therapy. In addition, this note is not enough to prove a connection between Oliver not having received continuous oxygen between 2008 and 2012 and any worsening of his symptoms.

The United States also argues that Oliver has not shown that treatment for his sleep apnea was negligent. Dr. Pfeiffer opines that Oliver was treated by specialists and the BOP followed the advice of the specialists, none of whom directed that the settings on Oliver's CPAP machine be changed and that he did not suffer any injury because this treatment. Oliver's arguments to the contrary again are insufficient to rebut this expert opinion.

In short, is it undisputed that BOP physicians referred Oliver to outside specialists when his conditions required it and followed the advice of those specialists. The United States has presented expert testimony that the actions by these doctors were within the standard of care and that Oliver did not suffer any injury as a result. The United States is therefore entitled to summary judgment on Oliver's FTCA claim.

B. *Bivens*

Dr. Wilson also argues that he is entitled to summary judgment on Oliver's *Bivens* claim because of judgment bar of 28 U.S.C. § 2676. That statute provides:

> The judgment in an action under section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim.

As applicable here, the judgment bar prevents recovery under *Bivens* when a plaintiff has already lost his FTCA claim. *See Simmons v. Himmelreich,* 136 S.Ct. 1843, 1846 (2016); *Manning v.*

*United States*, 546 F.3d 430, 435 (7th. Cir. 2008). Therefore, because the United States is entitled to judgment on Oliver's FTCA claim, Dr. Wilson is entitled to judgment on the *Bivens* claim based on the same facts.

## Conclusion

For the foregoing reasons, the motion for summary judgment, [dkt. 64], is **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 8/10/2017

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

EMMANUEL OLIVER
3954 Elmonte Ct.
Indianapolis, IN 46226

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov